SPENCER et al. v. WATKINS et al.

(Circuit Court of Appeals, Eighth Circuit. April 8, 1909.)

No. 2,860.

1. COURTS (§ 259*)—JURISDICTION OF FEDERAL COURTS—POWERS OF STATE LEGISLATURE.

Jurisdiction of cases at law or in equity involving controversies between citizens of different states is conferred by the Constitution and laws of Congress upon the courts of the United States, and such jurisdiction cannot be defeated or impaired by the laws of a state. If a suit, when viewed in the light of recognized principles of jurisprudence, appears to be a suit of a civil nature at common law or in equity, it matters not that by a local statute exclusive cognizance has been in terms reserved to the courts of the state generally or to some specially designated local tribunal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 795; Dec. Dig. § 259.*

Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.

Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. COURTS (§ 259*)—JURISDICTION OF FEDERAL COURTS—POWER OF STATE LEGISLATURES.

Where the laws of a state enlarge the jurisdiction of the probate courts, which ordinarily embraces proceedings in rem in respect to estates of decedents, as the probating of wills and the administration of estates by which the property of a decedent is devolved, to include also suits formerly cognizable in the form of ordinary suits at law or in equity in courts of general jurisdiction, they are dealing with that which may also be subject to the judicial power of the United States, and, while they may properly regulate the jurisdiction of the courts of the state, they cannot restrict that of the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 795; Dec. Dig. § 259.*]

3. COURTS (§ 262*) — JURISDICTION OF FEDERAL COURTS — CASES IN LAW AND EQUITY.

A suit by heirs at law of a testatrix, brought after the will has been probated and the estate fully administered, except the payment of a bequest of the residuary estate for charitable purposes, against the executors and a corporation organized to take and administer the charity, to have the bequest declared void as contrary to the laws of the state, is not a probate proceeding, but has all the elements of a plenary suit inter partes, and is within the jurisdiction of a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 797; Dec. Dig. § 262.*]

4. JUDGMENT (§ 570*) — MERGER AND BAR OF CAUSE OF ACTION—JUDGMENT ON MOTION TO DISMISS.

A testator left as his only heirs his widow and daughter, and by his will bequeathed a part of his estate in trust in part for their benefit, and ultimately, in case the daughter should die without leaving children, to be devoted to a charitable purpose. The daughter died without issue, and later the widow died testate, bequeathing her residuary estate to found a charity in conformity with the wills of her husband and daughter, and a corporation was formed to take and administer the same. The trustees under the husband's will brought a suit in a state court to obtain a construction of the same, in which heirs of the widow intervened, claiming that the charitable bequests in both wills were void, and that the widow's residuary estate, including the property inherited as an heir of her hus-

band, descended to her heirs. To such suit the executors of both wills and the charitable corporation were parties. A motion to strike out the complaint in intervention, equivalent under the statute to a demurrer, was sustained on the ground that the bequest in the widow's will was valid, and interveners therefore had no standing to attack the will of the husband, which judgment was affirmed by the Supreme Court of the state. *Held*, that such question was directly in issue, and the judgment was an adjudication thereof on the merits, which bound all parties, and was a bar to a subsequent suit brought by the heirs in a federal court to have the bequest declared invalid.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1032; Dec. Dig. § 570.*]

5. JUDGMENT (§ 584*) — BAR OF 'CAUSE OF ACTION — NATURE, RENDITION', AND FORM OF JUDGMENT.

To render a judgment conclusive as an estoppel between parties to a suit, it is not always essential that there should have been a formal joinder of issue between such parties; nor does it matter that the question decided was purely one of law, and the decision rendered on motion or demurrer, provided the merits were involved and decided, and the decision was final.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1079; Dec. Dig. § 584.*]

Appeal from the Circuit Court of the United States for the District of Minnesota.

Edward F. Treadwell (A. E. Macartney, N. H. Clapp, and George H. Mastick, on the brief), for appellants.

Frank B. Kellogg (C. A. Severance and Robert E. Olds, on the brief), for appellees.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This was a suit by heirs at law of Fanny S. Wilder, deceased, to defeat a charitable bequest in her will upon the ground that it was void under the laws of the state of Minnesota, where she was domiciled, and for the allotment to them of the property embraced in the bequest. It was brought against the executors and the "A H. Wilder Charity, Founded by Fanny S. Wilder," a charitable corporation organized to accept the bequest by trustees named in the will and conformably to directions therein. The trustees themselves were also made parties defendant. The ground of federal jurisdiction was diversity of citizenship. The cause having been submitted upon the pleadings and stipulated facts, the Circuit Court held with the defendants and dismissed complainants' bill. The court was of opinion that prior litigation in the courts of the state involved the same question, that the heirs had participated therein, had been heard, and were defeated, and consequently the judgments of those courts barred further controversy. The heirs prosecuted this appeal. The defendants say the Circuit Court did not have jurisdiction of the cause, but that, if it did, its decree dismissing the bill was right.

It is said, in substance, that the Circuit Court was without jurisdiction, because the suit was not one at common law or in equity, within the meaning of the Constitution of the United States and the judiciary act, but, on the contrary, was of a probate character, and

pertained to the administration of an estate of a deceased person, of which the local probate court was invested with exclusive cognizance by the Constitution and statutes of the state. See Appleby v. Watkins, 95 Minn. 455, 104 N. W. 301.

If the case was not one of probate or administration within the proper meaning of those terms, but in nature and form was one at law or in equity, the right of the heirs to invoke the jurisdiction of the Circuit Court is not affected by the law of the state. Jurisdiction of cases in law and equity involving controversies between citizens of different states was conferred by the Constitution upon the courts of the United States; and the laws of Congress, passed in pursuance of the Constitution, creating the courts inferior to the Supreme Court, and defining and distributing the jurisdiction, have given the Circuit Courts original cognizance of such cases. Nothing is more clearly settled than that the jurisdiction so conferred cannot be defeated or impaired by the laws of a state regulating the distribution of its own judicial power among its own courts. When this is asserted to have been done, the inquiry always turns to the intrinsic character of the controversy, and if, when viewed in the light of recognized principles of jurisprudence, it appears to be a suit of a civil nature at common law or in equity, it matters not that by local statute exclusive cognizance has been in terms reserved to the courts of the state generally, or to some specially designated local tribunal. This must, of necessity, be so; otherwise, the judicial power of the United States, as understood at the adoption of the Constitution, would have no uniform or permanent measure, but would depend upon the varying legislative action of the several states, and as to that founded on diversity of citizenship the tendency would be towards its extinction by absorption in the exclusive jurisdiction of the local tribunals. The equity jurisdiction conferred by the Constitution upon the courts of the United States is the same as that then possessed by the High Court of Chancery in England in its judicial capacity, as distinguished from the jurisdiction of a political or governmental character which was exercised by the Chancellor as the representative of the crown. It is uniform throughout the United States, not differing in one state from that in another, and is subject to neither limitation nor restraint by state legislation. True, where a state gives a remedy, not theretofore existing, by civil action in its courts of general jurisdiction, such remedy may also be had in the courts of the United States, if consistent with their forms and modes of procedure; but that is an extension or enlargement of jurisdiction, and not a limitation or impairment.

It is quite true that, if the controversy before us was purely one relating to probate or administration, the Circuit Court was without jurisdiction; but was the case of that character? The right to take property by inheritance or by will is not a natural right, but is a privilege which is the creature of the law. The power to authorize and regulate the disposal and distribution of property at death rests with the state, and it may impose such conditions as may be deemed necessary to its interests and policy as the sovereign. So in a sense the estate of a deceased person is without an owner until the way has been cleared by the execution of the laws regulating its devolution. The

state, by its court'of probate, therefore, steps in and takes possession; and the proceedings in such court to prove and establish an instrument as the will of the deceased duly made according to the statute, in the granting of letters testamentary and of administration, and in the usual administration which precedes the delivery of an estate according to the testamentary directions of the testator, or according to the prescribed rule of distribution in case of intestacy, partake of the character of proceedings in rem, to which all the world are parties. Though much that is done is in form ex parte, yet because of the custody of the estate and the nature of the proceedings every one is bound. Jurisdiction over the probating of wills and the granting of administrations, which was formerly in the ancient ecclesiastical courts of England, has fallen to the modern probate courts, where, generally speaking, it is exclusively exercised. In some states, as in Minnesota, the statutes have added much that was formerly cognizable in the form of ordinary suits at law or in equity in courts of general jurisdiction; but it is manifest that in doing so they are dealing with that which may also be subject to the judicial power of the United States. Statutes of that character may very properly regulate the jurisdiction of the courts of the states, but they cannot restrict that of the courts of the United States. Security Trust Co. v. Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 147.

We think that a controversy like that before us is not one strictly pertaining to probate and administration, but, on the contrary, has every element of a plenary suit inter partes, and that it belongs to a class of which the English courts of chancery were accustomed to take cognizance as involving the execution of trusts. 3 Pomeroy's Eq. Juris. § 1127. The suit of the heirs was not a will contest in the customary acceptation of that phrase. No question was involved that would properly arise at the presentation of a will for admission to probate. The heirs did not seek to annul the probate of the will in question. They did not challenge the testamentary capacity of the testatrix or the sufficiency as to authentication or form of the written expression of her testamentary purposes. On the contrary, it was averred in their bill of complaint and admitted in the answer that the instruments in question had been duly admitted to probate as the last will and testament of the deceased, and that letters testamentary had been duly issued to the defendant executors. It was likewise averred and admitted that all allowable debts and claims had been paid, all bequests preceding that of the residuary estate had been discharged, the estate had been fully administered up to the time for final decree assigning the residue to the persons by law entitled thereto, and that an application of the executors for a final decree of distribution had been filed in the probate court. The suit was brought after the ordinary matters incident to probate and administration had been fully disposed of and when final distribution was at hand, and its object was to have the bequest of the residuary estate declared contrary to the laws of the state relating to the disposition of property for charitable purposes, and to secure for the complaining heirs their respective shares thereof upon the ground that the deceased had

died intestate as to the estate in question. In probate and administration proceedings controversies do not ordinarily arise having the characteristics of a suit at law or in equity, in which there is a clear division and alignment of parties litigant; but in the case before us the contending parties are distinctly ranged upon opposing sides—upon one the heirs who would inherit as in case of intestacy if the bequest were held void, and upon the other the Wilder Charity, the charitable corporation, which would take as legatee if the bequest were sustained, and also the executors in possession of the estate, whose course would be affected by the litigation. This was a civil suit in equity, within the jurisdiction of the Circuit Court. It should be added that in purpose and effect it no more interfered with the probate court in its rightful custody of the estate than would an ordinary action and judgment at law in the Circuit Court establishing a claim or demand on contract. We forbear citing the many precedents on these questions, as we think there is no distinction in principle between a suit like this, brought after the course of administration has run, to establish the rights of heirs as against a bequest claimed to be void, and one brought to determine which of two classes of heirs inherits in case of admitted intestacy, as in Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867.

Upon the defense of estoppel of the heirs by prior judgment we need refer to but one of the proceedings in the state courts. The facts necessary to an understanding of it are as follows: Amherst H. Wilder, of Ramsey county, Minn., died testate in 1894, leaving as his sole heirs his widow, Fanny S. Wilder, and their daughter Cornelia, who afterwards became Mrs. Appleby. By his will, after certain specific bequests, he left one-third of his estate to his widow, and the residue to trustees upon certain trusts, in part for the benefit of the widow and daughter, all ultimately to be devoted to charitable purposes in certain contingencies. In January, 1903, Mrs. Appleby died, leaving a will in which she devoted her residuary estate to purposes similar to those described in the will of her father. Mrs. Wilder died in April, 1903. As already observed, she bequeathed the residue of her estate to a charitable corporation, to be formed by trustees charged with that duty, and the Wilder Charity was thereupon brought into being. Trustees under the will of Mr. Wilder, being doubtful as to its meaning and their duties, brought a suit in the district court of Ramsey county, Minn., to obtain an authoritative judicial construction of its terms and directions as to their conduct upon which they might safely rely. There were made parties defendant the respective executors of the three wills, the Wilder Charity, which took the charitable bequest under the will of Mrs. Wilder, and various other persons interested in the estates. The suit was known as "Watkins v. Bigelow." The complainants in the suit now before us, heirs of Mrs. Wilder, not having been made parties, requested the executors of her will to file an answer in Watkins v. Bigelow, contesting the validity of Mr. Wilder's bequest to charity, and to permit their counsel to speak in the names of the executors on that issue. To explain their interest in the matter they claimed that his bequest to charity was void, and the

property covered by it should descend to his heirs, of whom Mrs. Wilder was one; that the charitable bequest of the residuary estate of Mrs. Wilder was substantially similar, was likewise void, and that that estate, enriched by the failure of her husband's bequest, should, therefore, descend to her heirs. Mrs. Wilder's executors responded that her will disposing of her estate was entirely valid, and, as her heirs had no standing to contest the prior will of her husband, excepting upon the assumption of her intestacy, they denied the request. The heirs then filed in Watkins v. Bigelow a petition for leave to answer and defend, and also a complaint in intervention, each containing assertions like those in their request of Mrs. Wilder's executors, with the addition that the daughter's bequest of her residuary estate to charity was also void, and the property affected by it passed to the estate of her mother. The complaint in intervention was in express terms directed against all the plaintiffs and defendants in that cause, and under the Minnesota practice (Gen. St. 1894, § 5273), if they had an interest in the matter in litigation, it was filed and could be maintained as of right, and did not depend upon grace or favor. The plaintiffs and various defendants moved to strike the complaint in intervention from the files upon the ground, among others, that the intervening heirs had no interest in the subject-matter of the action. This was proper practice. The statute prescribes an interest in the matter in litigation as ground of intervention. A complaint in intervention is demurrable, if it fail to state a ground of intervention. Shepard v. County of Murray, 33 Minn. 519, 24 N. W. 291. The motion to strike from the files was equivalent to a demurrer (McAllen v. Hodge, 92 Minn. 68, 99 N. W. 424), and it was so treated. After due hearing the district court denied the petition for leave to answer, and sustained the motion to strike the complaint in intervention from the files, upon the sole ground that the charitable bequest of Mrs. Wilder was valid, and therefore her heirs had no interest in the action. The court said:

"The heirs of Fanny S. Wilder have a right to be in this case if her gift to charity is invalid. If it is valid, they have no right here. The court has jurisdiction to determine the validity of Mrs. Wilder's will in this action, if it is necessary to do so in order to decide these motions. It is necessary to do so, because the court must decide whether the complaint in intervention or the proposed answer shows that the heirs have an interest in the fund in this case."

Upon appeal by the heirs to the Supreme Court of the state, the order was affirmed. Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104. The following brief excerpt from the opinion shows definitely what was there decided:

"Whether the appellants have any interest in the result of this action depends upon the answer which shall be given to this question: Is Mrs. Fanny Spencer Wilder's will valid? This is the sole question presented for our consideration by the record."

The question was answered in the affirmative. It is now contended that the validity of Mrs. Wilder's residuary bequest was not involved in Watkins v. Bigelow, and therefore, there is no bar to the present suit. It is said the object of that case was to secure a con-

struction of the will of Amherst H. Wilder, and that of the intervention was to have his bequest to charity annulled, so the property involved would pass to the estate of his widow. If we look no further than this, it might truly be said the validity of Mrs. Wilder's bequest was not in issue, and that the heirs and the Wilder Charity were not adverse parties; for whatever would enlarge her residuary estate would benefit the persons lawfully entitled thereto, whoever they might be. But that was not all. The heirs had first to show a right to intervene in the principal case, and were, therefore, compelled to assert that Mrs. Wilder's bequest, which stood between them and inheritance, was also void, and that the Wilder Charity took nothing as legatee. If they were right in this, they could maintain their intervention as heirs at law and assail the prior will; otherwise, not. Mrs. Wilder's residuary bequest was an obstacle they had to destroy to gain an assured foothold in the litigation, and in their complaint in intervention they expressly tendered that issue to all of the parties plaintiff and defendant. It is manifest that, as regards the controversy so raised, the interests of the heirs on the one hand and of the Wilder Charity on the other were directly antagonistic and conflicting. They were adverse parties.

The question involved was not a mere collateral one arising during the progress of a cause, but was of the ultimate and substantial rights of the parties. The order of the district court was not in an inconclusive summary proceeding. It went to the very foundation of their claims, and was in terms decisive of the merits after a full hearing. It was a final and appealable order, and was affirmed upon like hearing by the highest judicial tribunal of the state. The matter directly in issue now, as then, is the validity of Mrs. Wilder's residuary bequest. The grounds of attack upon it are the same, with no new feature of fact or law, and there is also an exact identity of parties in interest. There would, therefore, seem to exist all of the elements of an estoppel by judgment. It is not material that the Wilder Charity did not expressly join in the motion to strike the complaint in intervention from the files. The heirs made it a party to the intervention by general designation, and also by name made it a party to the appeal to the Supreme Court. A formal joinder of issue is not always essential. United States Fidelity & Guaranty Co. v. Haggart (C. C. A.) 163 Fed. 801. Neither does it matter that the question decided in the prior case was purely one of law (Mitchell v. Bank, 180 U. S. 471, 21 Sup. Ct. 418, 45 L. Ed. 627), nor that the decision was upon a motion or demurrer (Com'rs v. McIntosh, 30 Kan. 234, 1 Pac. 572; Truesdale v. Trust Company, 67 Minn. 454, 70 N. W. 568, 64 Am. St. Rep. 430; Oregonian Ry. Co. v. Navigation Co. [C. C.] 27 Fed. 277), provided the merits were involved and were decided, and the order or decision of the court was final. We think the complaining heirs have had their day in court upon the validity of Mrs. Wilder's bequest, and, having been defeated, are concluded.

The decree of the Circuit Court is affirmed.